

## NO. 08-4305

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

### JOHN E. DUPONT,
**Appellant**

### VS.

### PAUL STOWITZKY, ET AL.,
**Appellees**

## RESPONSE IN OPPOSITION TO APPLICATION
## <u>FOR CERTIFICATE OF APPEALABILITY</u>

**William R. Toal, III**
**Assistant District Attorney**

**A. Sheldon Kovach**
**Deputy District Attorney**
**Chief, Law and Appeals Unit**

**G. Michael Green**
**District Attorney**
**(Attorneys for Appellee)**

**Delaware County Court House**
**201 West Front Street**
**Media, PA 19063**
**(610) 891-4210**

## I.    __STATEMENT OF THE CASE__

Appellant is serving a term of from 13 to 30 years imprisonment for Third Degree Murder.    Appellant was found guilty but mentally ill in connection with the January 26, 1996 murder of Olympic wrestler and gold medal winner Dave Schultz.  At trial, appellant claimed to have been insane at the time he shot and killed Dave Schultz.

Following his conviction, appellant filed an appeal in which he raised numerous issues.    The Superior Court, on April 26, 1999, rejected appellant's claims and affirmed the judgment of sentence.    See: Commonwealth v. Dupont, 730 A.2d 970 (Pa.Super. 1999).  On June 29, 1999, the Superior Court denied appellant's request for reconsideration. On January 13, 2000, the Pennsylvania Supreme Court denied appellant's petition seeking Allowance of Appeal.  On June 12, 2000, the United States Supreme Court denied appellant's petition seeking certiorari.  Dupont v. Pennsylvania, 530 U.S. 1231, 120 S.Ct. 2663, 147 L.Ed.2d 276 (2000).

Following his direct appeal, appellant filed a Post-Conviction Relief Act (PCRA) petition on March 21, 2001.  On September 22, 2003, Judge Jenkins filed an order dismissing the PCRA petition without an evidentiary hearing.

On September 17, 2004, the Superior Court affirmed the order of Judge Jenkins. Commonwealth v. Dupont, 860 A.2d 525 (Pa.Super. 2004). A petition seeking Allowance of Appeal was denied by the Pennsylvania Supreme Court on October 25, 2005.   [Pennsylvania Supreme Court Docket No. 1130 MAL 2004].

On January 11, 2006, appellant filed a federal habeas corpus petition. On March 9, 2006, appellant filed a petition for a writ of certiorari with the United States Supreme Court.  The United States Supreme Court denied certiorari by Order dated May 15, 2006.  [2006 WL 615152].  On April 18, 2007, United States Magistrate Judge Linda Caracappa issued a report and recommendation in which she rejected each of appellant's habeas corpus claims and recommended that no Certificate of Appealability be issued.   On September 18, 2008, District Court Judge Petrese Tucker approved and adopted the report and recommendation of United States Magistrate Judge Caracappa.   Judge Tucker specifically ruled that no probable cause exited for the issuance of a Certificate of Appealability.

After being unsuccessful on direct appeal, appellant, in his PCRA petition, shifted gears and no longer claimed that he had been insane at the time he killed Dave Schultz.   Instead, in his PCRA petition, appellant claimed that at the time of the murder he had been under the influence of

2

the drug Scopolamine, which he claimed to have been given by Bulgarian doctors in 1995. Appellant further claimed that all prior attorneys, including Vincent Grogan, Esquire, Alan Dershowitz, Esquire, F. Lee Bailey, Esquire, Nathan Dershowitz, Esquire, Norris Gelman, Esquire, William Lamb, Esquire, Richard Sprague, Esquire, Thomas Bergstrom, Esquire and other highly competent and nationally renowned attorneys, had been ineffective for, among other reasons, failing to pursue this claim regarding the purported adverse effects of Scopolamine. Judge Jenkins, serving as the PCRA court, rejected these claims as meritless. The Pennsylvania Superior Court then rejected these claims on appeal. The Superior Court and the United States District Court noted that there was no recognized defense in Pennsylvania regarding "involuntary intoxication". Both Courts also noted that appellant's defense experts knew of the appellant's Scopolamine use and both ruled that trial counsel could not be deemed ineffective for failing to pursue such a claim where the experts said that appellant was insane and not suffering from the effects of Scopolamine.

## II.  **ARGUMENT**

**A. THE DISTRICT COURT PROPERLY RULED THAT PENNSYLVANIA'S STATUTORY PROVISIONS AND THE PROCESS USED BY THE JURY TO ARRIVE AT ITS VERDICT WERE CONSTITUTIONALLY SOUND AND REASONABLE JURISTS COULD**

NOT DISAGREE WITH ITS RESOLUTION OF THE CONSTITUTIONAL ISSUES PRESENTED.

The pertinent sections of the Crimes Code provide as follows:

### §314. Guilty but mentally ill

(a)    **General rule.**—A person who timely offers a defense of insanity in accordance with the Rules or Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.

(c)    **Definitions. ...**

(1)  "Mentally Ill."  One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
(2)  "Legal insanity."  At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. §314.

### §315. Insanity

(a)    **General rule.**—The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.

> **(b)    Definition.**—For purposes of this section, the phrase "**legally insane**" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. §315.

Appellant first claims that the definitions of GBMI and "Not Guilty by Reason of Insanity" are indistinguishable and that juries are left free to make result-oriented verdicts without any guidance from the applicable law. He is mistaken.

In <u>Commonwealth v. Trill</u>, 374 Pa.Super. 549, 543 A.2d 1106 (1988), <u>appeal denied</u>, 522 Pa. 603, 662 A.2d 826 (1989), the Superior Court noted the following in applying these statutory provisions:

> [T]he application of these definitional standards to a particular defendant may be difficult.  <u>See</u> Comment, <u>The Guilty But Mentally Ill Verdict and Due Process</u>, 92 Yale L.J. 475, 489 (1983).  Indeed, the concepts of mental illness and insanity are closely interwoven.  One commentator has noted:  Mental illness and insanity are qualitatively separate concepts.  The two definitions do, however overlap.  All individuals who are legally insane are also mentally ill.  But the converse of the statement, that all persons who are mentally ill are also insane, is false.  The difference is not quantitative.  In other words, an extremely mentally ill individual may not be legally insane.  A high degree of mental illness does not destroy mens rea.  The difference is qualitative.  Insanity definitions are attempts to isolate the element of mens rea that may be present in some illnesses but not in others.  Because the two concepts involve

qualitatively separate elements, they are not likely to cause undue confusion to juries.

Id. at 594, 543 A.2d at 1128.

*    *    *    *    *

To date, medical science has been unsuccessful in reducing all of the causes and symptoms of mental illness to an exact science. Consequently, much of what is written and prescribed for mentally disturbed individuals is subject to argument and debate. Such is the case when a lawmaking body attempts to define terms such as mental illness and insanity.

Our legislature settled upon what they believed to be the most comprehensive legal definitions available to describe the terms "mentally ill" and "legal insanity" and incorporated them into Pennsylvania's guilty but mentally ill statutory scheme. The definition of "legal insanity" derived from the well-engrained common-law M'Naghten standard for insanity, whereas the definition of "mentally ill" emanated from the American Law Institute's insanity standard. See ALI Model Penal Code §4.01(1) (Proposed Official Draft 1962). By transposing the ALI definition into one for mental illness, the legislature accomplished what they believed to be a logical corollary to the M'Naghten rule. We will not second guess the rectitude of this choice. Through the study of the Michigan statutory scheme and subsequent developments in the guilty but mentally ill verdict, our lawmaking body arrived upon a set of definitions that they hoped would reduce the determination of a defendant's mental state to a workable formula. See Comment, Guilty But Mentally Ill, A Reasonable Compromise for Pennsylvania, 85 Dick.L.Rev. 289, 311-12 (1981). In essence, they utilized what their research and experience proved to be the "state of the art" in definitive language. Although we believe that it is virtually impossible to fabricate exact definitions for such amorphous concepts as "mental illness" and legal sanity," we nonetheless conclude that our legislature has succeeded in implementing definitions which provide sufficient clarity and distinction to provide guidance for the fact finder.

6

Id. at 596-597, 543 A.2d at 1129.

Contrary to appellant's claim, there are significant differences between the M'Naghten and ALI definitions of insanity. Under the M'Naghten standard, a person is insane only if the did not "know" that what he was doing was "wrong". This is an extraordinarily difficult standard to meet. The ALI insanity standard, which Pennsylvania uses to define GBMI, is far easier to meet. The ALI standard is met where a person lacked "substantial capacity" to "appreciate" the "wrongfulness of his conduct". The M'Naghten standard requires complete ignorance that the conduct was wrong. In contrast, the ALI standard is met when a person did know that his conduct was wrong, but he was unable to appreciate the full moral and legal implications of his conduct. As the commentary to the ALI test explains, to "appreciate" the "wrongfulness" of conduct is to "understand the idea as a matter of importance and reality; to grasp it in a way that makes it meaningful in the life of the individual, not as a bare abstraction put in words." Model Penal Code, §4.01 Comment, Appendix C (1985) (by the Reporter, Professor Herbert Wechsler concerning a model charge). "The use of 'appreciate' rather than 'know' conveys a broader sense of understanding than simple cognition." Model Penal Code §4.01 Comment 3 at 169.

7

As explained in <u>Trill</u>, <u>supra</u>, a jury is not just given the two concepts –
GBMI and Not Guilty by Reason of Insanity – and told to go sort it out
however they see fit.    Under the law, as crafted by the Pennsylvania
Legislature and as explained by Judge Jenkins to the jury in this case, the
jury must first determine if the Commonwealth proved appellant guilty
beyond a reasonable doubt of the crimes charged.    The Commonwealth
must establish each element of the crimes charged.    If, as in this case, the
Commonwealth fulfills that burden of proof, the jury must then address the
issue of insanity.    If appellant had been able to meet his burden of proof by
establishing by a preponderance of the evidence that he was insane at the
time he committed the crimes the jury was required to determine that he be
found Not Guilty by Reason of Insanity.    When, as here, appellant failed to
meet this burden, the jury was next required to address whether appellant
was shown, beyond a reasonable doubt, to be mentally ill.    If, as here, the
jury determines that, yes, appellant is mentally ill beyond a reasonable
doubt, then, and only then, is the jury permitted to return a verdict of GBMI.
<u>See: Commonwealth v. Trill</u>, <u>supra</u>, 374 Pa.Super. at 592-593, 543 A.2d at
1127-1128.

The process set forth by the Pennsylvania Crimes Code for how a
fact finder must determine the appropriate verdict in cases involving claims

8

of mental illness and insanity is neither vague nor confusing. Appellant attempts to reduce Pennsylvania's carefully crafted statutory process for addressing issues of criminal responsibility when claims of insanity and mental illness are raised into an outcome-based free-for-all. By reducing the entirety of Judge Jenkins' lengthy, carefully articulated and detailed jury instructions regarding the process by which appellant's case was to be decided to the simplistic – "sick rather than bad or both bad and sick" – is neither fair nor appropriate under the circumstances. Plus, the specific phrase that appellant continually refers to was previously approved by Pennsylvania's appellate courts. See: Commonwealth v. Bowers, 400 Pa.Super. 377, 583 A.2d 1165, 1174 (1990); Commonwealth v. Cain, 349 Pa.Super. 500, 503 A.2d 959 (1986).

There are clearly many different constitutional approaches to providing for an insanity defense and a GBMI verdict. The fact that Pennsylvania's approach is not precisely the same as what some other states have done does not render Pennsylvania's approach unconstitutional. Pennsylvania has pursued a middle course – neither abolishing insanity as a defense nor relying on the more liberal ALI standard for defining mental illness as an insanity defense. In Pennsylvania, jurors are made to understand that a defendant must, by a

preponderance of the evidence, establish the M'Naghten standard to prove insanity and only if that is not established do they get to inquire about the lesser standard of mental illness found in the GBMI statute. The statutory provisions and the process used by the jury to arrive at its verdict, as instructed by Judge Jenkins, clearly established that appellant was not deprived of due process in this case.

Judge Jenkins properly instructed the jury regarding how it was to approach the mental health/insanity issues raised in this case. Judge Jenkins first explained each crime charged and the burden of proof being upon the Commonwealth before she discussed insanity and mental health issues. [N.T. 2/18/97, p. 3314-3315, 3129-3138].

Applying the proper standard of review under AEDPA, it cannot be said that the state courts determination of this issue resulted in a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or resulted in a decision based upon an unreasonable determination of facts. Accordingly, this claim was properly rejected by the District Court.

In rejecting appellant's habeas claim, Judge Tucker, through United States Magistrate Judge Caracappa, noted:

A lengthy instruction was given by Judge Jenkins in which Judge Jenkins gave a detailed explanation of the standards that

10

must be met by both the Commonwealth and petitioner, the differences in "legal insanity" and "mental illness", and the above mentioned steps that must be followed by the jury as laid out in Trill.    N.T. 2/18/97, p. 3138-3147.    Judge Jenkins followed the Pennsylvania Suggested Standard Jury Instruction (Criminal) 5.01A(1).  Petitioner has failed to prove that the state court dismissal of this claim was either contrary to or an unreasonable application of a clearly established federal law as determined by the United States Supreme Court or that the decision was based upon an unreasonable factual determination.  As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 11].

Applying the proper standard of review regarding a Certificate of Appealability application, it cannot be said that a reasonable jurist would differ with the views expressed by United States Magistrate Judge Caracappa and adopted by Judge Tucker.

**B.    APPELLANT'S CLAIM THAT THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OF APPELLANT'S PRIOR BAD ACTS WAS PROPERLY REJECTED BY THE DISTRICT COURT AND NO REASONABLE JURIST COULD DIFFER REGARDING THE COURT'S DETERMINATION.**

In the law, as in life, context is everything.  While evidence of other crimes or prior bad acts is generally inadmissible, there are instances when such evidence is permitted.  Such evidence is admissible when it is part of the sequence of events forming the history of the case as a part of the natural development of the facts.  Commonwealth v. Thomas, 552 Pa. 621, 717 A.2d 468 (1998).  Rebutting evidence of insanity is another instance

where evidence of prior bad acts is permitted.  <u>Commonwealth v. Banks</u>, 513 Pa. 318, 521 A.2d 1 (1987).

In this case, it was the defense which first presented evidence of appellant's drug and alcohol abuse and introduced evidence of appellant's odd behavior dating back to the mid-1980's in an attempt to establish that appellant's mental health had begun to deteriorate as early as that timeframe.  This evidence was permitted by Judge Jenkins as appellant sought to establish an insanity defense.

Faced with this defense tactic, the prosecution sought to introduce evidence to rebut the suggestion that appellant's odd behaviors were the result of insanity or delusional episodes.  The prosecution sought to introduce evidence from the same time periods cited by the defense to illustrate that appellant was not insane.  The introduction of prior bad acts from within the timeframe relied upon by the defense which concerned appellant knowingly doing things which were "wrong" made perfect legal sense.  Again, context is everything.

In overruling appellant's claim of remoteness concerning the prosecution's evidence, Judge Jenkins stated: "Well, your objection to it is going to be overruled because I did not preclude the defense from putting on any evidence of the defendant's behavior in 1988, and in particular, I

think we've heard a lot of evidence about his behavior in 1988, and some specific incidents in 1988, which my recollection was about the time of his mother's death." [N.T. 2/7/97, p. 1983].

Judge Jenkins' decision to allow the prior bad acts evidence was perfectly consistent with Pennsylvania law and with the law of most other jurisdictions regarding the admission of evidence in the context of an insanity defense.  In applying the rule permitting the introduction of prior bad acts to rebut a claim of insanity, many cases cite Wigmore's treatment of the issue:

> Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of normality.  The mode of operation of the mind is ascertainable from the conduct of the person in question, i.e., from the effect produced by his surroundings on his mind when responding by action to those surroundings...  On the other hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent.

> The first and fundamental rule, then, will be that <u>any and all conduct</u> of the person is admissible in evidence.  There is no restriction as to the kind of conduct.  There can be none; for if a specific act does not indicate insanity, it may indicate sanity.  It will certainly throw light one way or the other upon the issue.

Wigmore on Evidence, §228 (1979); <u>see</u>: <u>Commonwealth v. Williams</u>, 160 A.2d 602 at 605 (citing with approval the Wigmore description of the rule).

The rationale for the rule admitting prior bad act evidence in an insanity case is also well stated in <u>United States v. Bradshaw</u>, 935 F.2d

13

295, 301-02 (D.C. Cir. 1991). Additional cases applying the broad rule for admitting prior bad acts to rebut an insanity defense include, <u>Gretzler v. Stewart</u>, 112 F.3d 992, 1003 (9th Cir. 1997); <u>United States v. Johnson</u>, 14 F.3d 766, 772 (2d Cir. 1994) (where defendant claimed insanity based on auditory hallucinations, government was entitled to show his ability to appreciate wrongfulness with evidence of prior convictions for burglary, armed robbery, rape, and forcible sodomy); <u>United States v. Medved</u>, 905 F.2d 935, 939 (6th Cir. 1990) (evidence that defendant robbed banks for thrill, not because he was insane); <u>United States v. Hauck</u>, 586 F.2d 1296, 1299 (8th Cir. 1978); <u>State v. Carter</u>, 503 A.2d 576, 581 (Conn. 1986); <u>Stacks v. State</u>, 372 N.E.2d 1201, 1209 (Ind. 1978); <u>Shepherd v. State</u>, 547 N.E.2d 839, 840 (Ind. 1989) ("Any evidence, remote though it may be, which has a logical relevance to the defendant's sanity, is admissible on that issue. The remoteness in time and the difference in factual settings are all matters to be weighed by the jury."); <u>State v. Larsen</u>, 606 P.2d 1159 (Or. 1979) (prior bad acts used to rebut claim of mental defect); <u>Lingerfelt v. State</u>, 629 S.W.2d 216, 217-18 (Tex. App. 1982) (admitting prior convictions for drug offenses to rebut defense expert's diagnosis of schizophrenia); <u>State v. Hunt</u>, 555 A.2d 369, 380 (Vt. 1988) ("a plea for

insanity opens a broad inquiry that may include previous episodes of violent and antisocial behavior").

The admission of the prior bad acts evidence rulings were not arbitrary and did not deny appellant of a fundamentally fair trial. Review of these claims establishes there was no violation of Due Process. The state court determinations on these claims were neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court, nor were the state court determinations based on an unreasonable determination of the facts. Accordingly, under the AEDPA standard of review, these claims were properly rejected by the District Court.

In rejecting appellant's claims concerning the admission of "prior bad acts" evidence, Judge Tucker, through United States Magistrate Judge Caracappa, was acutely aware of the role of federal courts in reviewing a habeas corpus petition and stated the following:

> The court's role on habeas review is not to decide whether a state trial judge's decision to admit evidence pursuant to state evidentiary rules was proper. See Marshall v. Lonberger, 459 U.S. 422, 438 n.6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). There must be a due process violation in order for a violation of a state evidence rule to constitute grounds for habeas corpus relief. Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). [A] federal court cannot disturb on due process grounds a state court's decision to admit prior bad acts evidence unless the admission of the evidence was arbitrary or

15

so prejudicial that it rendered the trial fundamentally unfair." Johnson v. Love, 940 F.Supp. 738 (E.D.Pa. 1996) (quoting Walter v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995).

It cannot be said that the state court's decision to admit petitioner's "prior bad acts" evidence was arbitrary and so prejudicial that it rendered the trial fundamentally unfair. Petitioner was asserting a defense of mental illness and the evidence offered by the prosecution went directly to rebutting petitioner's evidence of mental illness. We cannot find that petitioner's due process rights were violated by the admission of the "prior bad acts" evidence.

Petitioner further claims that the trial court violated petitioner's due process rights by inadequately instructing the jury on its use of the "prior bad acts" evidence. The state court found that the trial court properly instructed the jury regarding its consideration of "prior bad acts" evidence. The trial judge instructed the jury as follows:

> Ladies and gentlemen, you have heard also some evidence in this case that the defendant may have engaged in improper conduct for which he is not on trial. Testimony that improper conduct may have occurred is not proof that it did occur.

> And this evidence, ladies and gentlemen, is the kind of evidence I spoke of earlier in my remarks. It is before you for a limited purpose. And that is for the purpose of providing some background information that was used by the experts in their evaluations.

> It must not be considered by you in any other way than for the purpose I've just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

> If you find him guilty, it must be because you are convinced by the evidence that he committed the crime

16

charged and not because you believe he is a wicked person or a bad person or has engaged in some other improper conduct.

More specifically, ladies and gentlemen, you've heard testimony regarding the possibility that the defendant may have used drug or alcohol in the past. This evidence is not to be considered by you as any evidence whatsoever of the defendant's guilt of the crime charged. It is only relevant, if at all, if you believe that it bears on diagnosis of the defendant's mental condition at the time that he killed David Schultz and for no other purpose.

No evidence has been presented from which you can infer that the defendant was under the influence of drugs or alcohol at the time of the crime and you may not infer from any evidence of his prior use of drugs or alcohol that the defendant was under their influence at the time of the killing of David Schultz.

[N.T. 2/18/97, p. 3124-3125].

Petitioner claims that the court's instruction that the "bad acts" evidence could not be regarded "as showing that the defendant is a person of bad character or criminal tendencies form which you might be inclined to infer guilt" (N.T. 2/18/97, p. 3124), was insufficient. But as shown above, the court gave a much more detailed jury instruction addressing the "prior bad acts" evidence than the petitioner asserts. Petitioner has failed to prove that the state court dismissal of this claim was either contrary to or an unreasonable application of a clearly established federal law as determined by the United States Supreme Court or that the decision was based upon an unreasonable factual determination. As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 12-13].

Applying the proper standard of review, the District Court properly rejected appellant's claims regarding "prior bad acts" evidence. No reasonable jurist could differ in the resolution of the matter under the AEDPA standard. Accordingly, appellant's application for a Certificate of Appealability on this issue must be denied.

### C.   TRIAL COUNSEL PROVIDED CONSTITUTIONALLY EFFECTIVE ASSISTANCE TO APPELLANT.

Appellant claims that trial counsel provided ineffective assistance by: (1) failing to present character/reputation witnesses; (2) not requesting a limiting instruction regarding appellant's pre-arrest silence and requests to speak with his attorney; and (3) failing to properly investigate and present evidence of appellant's use of Scopolamine. These claims are patently meritless and were properly rejected by the District Court.

### 1.   Character/reputation witnesses

It is undisputed that in Pennsylvania the testimony of reputation witnesses alone can provide a basis for a not guilty verdict under the right circumstances. Commonwealth v. Fulton, 574 Pa. 282, 294-295, 830 A.2d 567, 575 (2003); Commonwealth v. Neely, 522 Pa. 236, 561 A.2d 1 (1989); Commonwealth v. Weiss, 530 Pa. 1, 606 A.2d 439 (1992); Commonwealth v. Morgan, 559 Pa. 248, 739 A.2d 1033 (1999). That does not mean, however, that the absence of reputation evidence, without more, will render

18

a verdict unreliable. <u>Commonwealth v. Cull</u>, 455 Pa.Super. 469, 688 A.2d 1191 (1997); <u>Commonwealth v. Ferrari</u>, 406 Pa.Super. 12, 593 A.2d 846 (1991) (where the defendant's and Commonwealth's witnesses' credibility was not the sole issue in the outcome of the case, the absence of character/reputation witnesses was not a substantial basis for the outcome of the case and therefore the defendant failed to establish prejudice under the circumstances).

The observations by Judge Jenkins and by the Superior Court regarding the purported character/reputation witnesses not living within the Commonwealth had nothing to do with any alleged xenophobic attitudes of Judge Jenkins or of the Superior Court. Instead, the observations had everything to do with the failure by petitioner to present proposed character/reputation witnesses who were familiar with petitioner's reputation <u>in his community</u>, <u>i.e.</u> in and around his home or among his colleagues in some specified area or endeavor, for the relevant characteristics, <u>i.e.</u> peacefulness or law-abiding behavior.

Appellant's purported good reputation for peaceful and law-abiding behavior was simply not of the weight or significance that, but for its absence, there was a reasonable probability that the outcome would have been different. This was no 'who dun it'. He did it. This was not a case

19

where the credibility or reputation of the accused was a factor in deciding whether the appellant committed the crime. Plus, appellant's alleged "good" reputation for law-abiding behavior was clearly at odds with evidence already of record.

The PCRA court, fully aware of the scope of damaging rebuttal testimony and the evidence of the eyewitnesses to the shooting already in the record, was in a unique position to decide that additional testimony on this point would not have made a difference in the outcome of the verdict. See: Commonwealth v. Cull, 455 Pa.Super. 469, 688 A.2d 1191 (1997) (where evidence of defendant's guilt was substantial and included a statement by defendant admitting the shooting, there was not a reasonable probability that the introduction of good character evidence would have caused a different outcome). As in Ferrari, supra, where the appellant's credibility was not the basis upon which the case was decided, reputation evidence, or rather the absence of it, cannot be said to have played a role in the outcome. Accordingly, it was within the PCRA court's discretion to dismiss this claim without an evidentiary hearing on grounds that appellant had failed to establish or allege the requisite prejudice.

A decision in state court on the prejudice prong of Strickland is a determination on the merits. Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir.

20

2006).  Applying the proper standard of review under AEDPA, it cannot be said that the state court determination was either contrary to or an unreasonable application of a clearly established federal law as determined by the United States Supreme Court or that the state court decision was based upon an unreasonable factual determination.  Therefore, appellant's claims were properly rejected as meritless.

In rejecting appellant's claim regarding reputation witnesses, Judge Tucker, through United States Magistrate Judge Caracappa, said the following:

> The evidence against petitioner was overwhelming, and petitioner has failed to show that there was a reasonable probability that, but for the lack of character witnesses, the outcome of petitioner's trial would have been different. Although petitioner has provided summaries of what the character witnesses would have testified to, petitioner has failed to establish that counsel's failure to call these witnesses would have changed the outcome of petitioner's trial.  This court concludes that the Superior Court's and PCRA court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court in <u>Williams</u>, 529 U.S. at 409-411. Furthermore, because trial counsel was not ineffective, appellate counsel cannot be found ineffective for failing to preserve such a claim.  As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 5].

## 2.    Limiting instruction

21

This issue regarding the lack of a limiting instruction and any alleged ineffectiveness was resolved against appellant in state court <u>not</u> on the basis of sound strategy grounds employed by prior counsel, but rather, on grounds that appellant failed to establish that he was prejudiced as a result of the absence of the limiting instruction.

The Commonwealth presented evidence of appellant's pre-arrest comments and his requests for counsel (the standoff tapes) as a basis to establish that appellant was not insane at the time of the murder – that he knew the wrongfulness of his conduct and acted accordingly in seeking counsel and by declining to speak with the police without first speaking with counsel. The defense not only made use of the same tapes and appellant's conduct as evidence of appellant's alleged insanity and/or mental illness, the evidence presented by the defense was essentially the same as that which was presented by the prosecution regarding the standoff tapes. Thus, the prosecution's evidence was simply cumulative of that which was properly admitted by the defense. It was also cumulative of the evidence presented regarding how appellant, after the murder, retreated to his mansion, told employees not to allow the police to enter, and how he reloaded and replaced the gun used to kill Dave Schultz. [N.T. 2/3/97, p. 1069; N.T. 2/12/97, p. 2529].

Because the evidence that the prosecution introduced in its case in chief is merely cumulative of what the defense presented in its own case in chief, there can be no claim of prejudice. See: Commonwealth v. Davis, 704 A.2d 650, 653 (Pa.Super. 1997).

Also, in this case the trial court gave specific instructions regarding how the jury should consider the evidence surrounding appellant's behavior after the murder and prior to his arrest. Judge Jenkins instructed the jury that:

> And, when you are considering the questions of legal insanity and mental illness, you should consider all of the evidence that's relevant, including the testimony of witnesses regarding the acts and words and conversations, behavior, appearance of the defendant at and close to the time of the alleged crime.

> *    *    *    *    *

> The critical time when legal insanity or mental illness has to exist in order to affect the verdict is at the time when the alleged criminal act was committed so you may consider evidence of the defendant's mental condition before and after that time but only to help you determine his mental condition and state of mind at the time of the crime.

[N.T. 2/18/97, p. 3143-3144].

Appellant claims that the evidentiary purposes for which the standoff tapes of appellant's pre-arrest silence and request for counsel were admitted was limited but, in absence of an appropriate limiting instruction, the jury could have used the evidence improperly. According to appellant,

23

that is enough to establish prejudice because the prosecution relied heavily

on this evidence in its argument to the jury and the evidence even if used

properly was inherently prejudicial.  He is mistaken.

As the Superior Court noted,

> In light of this cumulative evidence of calculated behavior in the
> wake of the shooting, duPont's argument as to prejudice fails to
> indicate what singular characteristic of the audiotapes in
> question constituted evidence sufficiently prejudicial to cast into
> doubt the legitimacy of the jury's verdict, even absent a limiting
> jury instruction.  See Stevens, 739 A.2d at 512 (noting that
> prejudice exists where appellant shows a "reasonable
> probability that, but for the error of counsel, the outcome of the
> proceeding would have been different.").

> The audiotape evidence introduced at trial to be cumulative, in
> effect, of the properly admitted evidence of DuPont's behavior
> immediately following the shooting and in the two days that
> followed.  DuPont, having failed to satisfy his burden of
> establishing prejudice deriving from the alleged ineffective
> assistance of trial counsel, he cannot satisfy Pierce's arguable
> merit prong as to appellate counsel.  Consequently, his
> assertion of IAC on this theory fails.

DuPont, supra, at 535.

The Superior Court properly reviewed the issue of alleged prejudice

to appellant.  The Superior Court concluded that the properly admitted

evidence regarding appellant's behavior immediately after the shooting –

where he returned to his home and reloaded and restored the murder

weapon – was more damning than the evidence from the standoff tapes

regarding any pre-arrest silence or request for counsel. DuPont, supra, at 535.

For prejudice to exist, the Court must conclude that but for counsel's error there is a reasonable probability that the outcome of the case would have been different. Strickland v. Washington, supra; Commonwealth v. Pierce, supra. In making such an analysis, the Court, by definition, must weigh the omitted jury instruction's impact against the strength of the Commonwealth's case. Here, that weighing process favors a conviction. This is so because, even taking out the standoff tapes, there was substantial evidence of appellant's own words and behavior immediately after the shooting which supported the conclusion that appellant knew what he had done, knew it was wrong, and worked to avoid being held responsible – evidence to rebut any insanity defense. See: Commonwealth v. DuPont, supra, at 535.

A limiting instruction would not have prevented the jury from considering the standoff tape evidence as evidence of appellant's sanity. The jury was focused upon the standoff tape evidence to help resolve the issue of appellant's mental health. There is no reasonable possibility that a limiting instruction would have changed the outcome of this case. Appellate counsel similarly cannot be deemed ineffective for failing to

25

pursue this meritless claim. Applying the proper standard of review under AEDPA, it is clear that the state court decision was not contrary to, or an unreasonable application of a clearly established federal law as determined by the United States Supreme Court or that it was based upon an unreasonable factual determination. Appellant's claims of ineffectiveness were properly rejected as meritless.

In rejecting this claim, Judge Tucker, through United States Magistrate Judge Caracappa, noted:

> Review of all the additional evidence in regards to the time period around the shooting and the instructions that were given to the jury by the trial court, petitioner has failed to prove prejudice due to the lack of a specific limiting jury instruction. Petitioner cannot prove that the outcome of the trial would have been different had petitioner's trial counsel requested a limiting jury instruction. We cannot find that trial counsel was ineffective as to this claim. We also cannot find appellate counsel ineffective for failing to pursue this claim. As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 6].

### 3.    Scopolamine

Judge Jenkins ruled: (1) involuntary intoxication is not a defense; and (2) because defense experts knew of the Scopolamine use and still diagnosed appellant as insane, prior counsel could not be deemed ineffective.

26

The Superior Court affirmed Judge Jenkins on this issue finding her analysis of the Scopolamine claim to be correct. "Because our review of Judge Jenkins' treatment of this issue reveals no error, and because we agree with her conclusions, we reject this challenge on the sound basis of her discussion." Commonwealth v. DuPont, supra. at 537.

Appellant's claim regarding the alleged failure to discover a connection between Scopolamine and appellant's mental health condition does not truly raise an ineffective assistance of counsel claim but rather raises a challenge to the job done by the defense mental health experts. Such a claim provides no basis for habeas relief or PCRA relief.

During trial in Henry v. Horn, 218 F.Supp. 671 (E.D.Pa. 2002), the defendant pursued an insanity defense relying on psychiatric expert witness, Dr. John O'Brien. After being convicted, the defendant asserted a claim that his expert, Dr. O'Brien, had not done a good job because the prosecution effectively rebutted the insanity defense resulting in a conviction. The defendant's claim was directed squarely at the expert and alleged that Dr. O'Brien had not properly carried out his duties as a psychiatrist. In rejecting this habeas claim, District Court Judge Brody noted that there is no basis for habeas relief under the Constitution for

ineffective assistance of one's psychiatrist. The Court further declined to even have an evidentiary hearing on the claim.

DuPont's claim is also actually one of ineffective assistance of experts as opposed to ineffectiveness of counsel. As in Henry v. Horn, the question of whether the experts might have done a better job investigating the alleged Scopolamine use reflects upon the experts and not counsel. According to the assertions in appellant's own federal habeas and PCRA petitions, the defense mental health experts were aware of the use by appellant of Bulgarian medications which were supposedly Scopolamine. There was nothing for counsel to do under the circumstances since it was the job of the experts to investigate and discover the cause and nature of appellant's alleged impairment.

It was the defense mental health experts who conducted the mental health tests and drug screens and examined appellant. It was defense experts who allegedly eliminated all other possible causes for appellant's aberrant behavior and it was they who diagnosed him as mentally ill after they reviewed all available medical history information and interviewed all relevant witnesses. [N.T. 2/6/97, p. 1732]. Appellant cannot blame prior counsel for what can only be properly characterized as a possible

shortcoming of his mental health experts. Both state and federal appellate courts have refused to find attorneys ineffective under such circumstances.

In rejecting this claim, Judge Tucker through United States Magistrate Judge Caracappa, correctly observed:

> Furthermore, trial counsel had petitioner examined by defense mental health experts. Petitioner asserts that he told trial counsel of petitioner's use of the prescription drug scopolamine while the mental health experts were examining petitioner. Trial counsel and the defense experts knew of the prescription drug use. The defense mental health experts performed a thorough examination of petitioner including interviews, drug screening, and past medical history. Trial counsel cannot be found ineffective for following the findings of the defense's own experts. Trial counsel relied on the defense experts to determine petitioner's mental health and cannot be found ineffective in doing so.
>
> Trial counsel was not ineffective for relying on defense's own mental health experts. Neither was counsel ineffective for failing to present an involuntary intoxication defense that is not expressly accepted in Pennsylvania. Likewise, since trial counsel was not ineffective, it cannot be said that appellate counsel was ineffective for failing to present the claim on appeal. As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 6-7].

Applying the proper standard of review under AEDPA, the District Court properly rejected appellant's ineffective assistance claims and no Certificate of Appealability should be issued on these matters.

**D.   THE DISTRICT COURT PROPERLY CONCLUDED THAT THE USE BY THE COMMONWEALTH OF DR. O'BRIEN AS AN EXPERT**

**DID NOT VIOLATE ANY SIXTH AMENDMENT PRIVILEGE OF APPELLANT AND NO REASONABLE JURIST COULD DIFFER.**

After the murder, Dr. O'Brien was originally chosen to serve as a court appointed expert but that appointment was rescinded by Judge Jenkins when the defense objected to the appointment based upon Dr. O'Brien's earlier consultation. When Dr. O'Brien was removed as a court appointed expert and well prior to being hired to serve as the prosecution's expert, Dr. O'Brien contacted Judge Jenkins <u>ex parte</u> to explain his previous consultation regarding DuPont. According to appellant, it was a violation of attorney-client privilege for Dr. O'Brien to ever reveal the contents of his consultation regarding DuPont and it was ineffective for prior counsel not to have insisted on conducting an evidentiary hearing when the issue of Dr. O'Brien's participation as a prosecution expert witness was first raised.

The attorney-client privilege clearly applies to consultations between a client and an attorney or other professionals whose advice or assistance is sought in providing legal advice to a client. <u>Commonwealth v. Hetzel</u>, 822 A.2d 747, 756-757 (Pa.Super. 2003). However, the privilege only applies to confidential communications made by the client to the attorney or to the other experts retained in connection with legal services. <u>Id</u>. In <u>Commonwealth v. Noll</u>, 443 Pa.Super. 602, 662 A.2d 1123 (1995), the

30

Superior Court prohibited the prosecution from retaining and using an accident reconstruction expert who had originally been hired by the defendant.  In Hetzel, the Superior Court precluded the Commonwealth from using the forensic odontologist originally hired by the defense because the doctor's photographs and diagrams were material prepared as agents of the defense attorney and were therefore covered by the attorney work product rules rather than the attorney-client privilege.

In the instant case, a sidebar discussion regarding the 1992 consultation involving Dr. O'Brien and Mr. Wochok occurred during the 1996 pre-trial competency hearing for appellant.    The discussions regarding the role that Dr. O'Brien played involving a consultation about the appellant revealed no such conflict as existed in Hetzel or Noll.

The trial court reviewed the record regarding the consultations between Mr. Wochok and Dr. O'Brien and properly concluded that the consultation was not made in connection with the provision of legal services to appellant.    There was no indication that any confidential communications from appellant were divulged during the 1992 consultation. While the topics discussed at the consultation included appellant's alleged mental health and drug abuse, there was no indication that appellant was involved in the discussions, was aware of the discussions, had authorized

31

the discussions or in any way developed any doctor-patient or attorney-client relationship with Dr. O'Brien. Also, there was no attorney-client relationship between Mr. Wochok and Dr. O'Brien and Dr. O'Brien was not serving as an agent of Mr. Wochok in connection with the legal representation of appellant. To the contrary, the consultation, by all accounts and as established of record, concerned an effort by Mr. Wochok to obtain information from several mental health experts regarding possible mental health services for appellant. Accordingly, the trial court was correct not to find that an attorney-client privilege existed which would have precluded Dr. O'Brien from serving as a prosecution expert. Commonwealth v. DuPont, 730 A.2d 970, 976-977 (Pa.Super. 1999). See: In Re: Investigating Grand Jury, 887 A.2d 257, 259 fn.1 (Pa.Super. 2005) (Court notes that there were no confidential communications involved in DuPont, only a consultation between counsel and psychiatrists four years before the shooting in question to see how best to obtain an evaluation of DuPont's mental health).

Mr. Wochok, appellant's attorney, had the opportunity prior to trial to explain to the trial court anything that he knew which might have served as a basis to disqualify Dr. O'Brien. He did not take issue with Dr. O'Brien's description of the consultation or Dr. O'Brien's role in it. It cannot be said

32

that defense counsel was deprived of the opportunity to be heard or that

appellant had anything substantial to add to the record then or now.

In rejecting appellant's claim, the District Court, through United States

Magistrate Judge Caracappa, stated:

> It cannot be said that the Superior Court's rejected of this claim
> was contrary to, or an unreasonable application of, clearly
> established federal law, as determined by the United States
> Supreme Court in <u>Williams</u>, 529 U.S. at 409-411. Furthermore,
> petitioner's trial counsel cannot be said to have been ineffective
> for failing to request a hearing on this issue. It has been found
> that there was no conflict with Dr. O'Brien's testimony so
> petitioner cannot prove that he was prejudiced by counsel's
> failure to request a hearing on Dr. O'Brien's testimony.
> Petitioner cannot prove that if counsel had requested a hearing
> on Dr. O'Brien's testimony there is a reasonable probability that
> the outcome of petitioner's trial would have been different. We
> must find that the trial court did not err in allowing Dr. O'Brien to
> testify as an expert witness for the prosecution and petitioner's
> trial counsel was not ineffective for failing to request a hearing
> on the prosecution's use of Dr. O'Brien as an expert witness.
> As such, we must dismiss the habeas petition as to this claim.

[United States District Court Opinion, 9/18/08, p. 8].

There was no need for an evidentiary hearing because there was no

conflict with Dr. O'Brien testifying for the Commonwealth. The facts found

by Superior Court were entirely reasonable and record based. Appellant's

claim that the findings were unreasonable and that an evidentiary hearing

is required totally ignores the record upon which the state courts made their

determinations. The District Court, applying the AEDPA standards, gave

the proper deference to the state court findings and determinations and correctly ruled that they were not contrary to or an unreasonable application of clearly established federal law as set forth by the United States Supreme Court.  Likewise, there was no basis to find that the state court's legal determinations were based upon unreasonable factual findings.  Accordingly, appellant's claim for a Certificate of Appealability and for an evidentiary haring must be rejected.

### E.   THE DISTRICT COURT PROPERLY REJECTED AS MERITLESS APPELLANT'S DUE PROCESS CLAIM REGARDING THE PRESENTATION BY THE COMMONWEALTH OF EVIDENCE OF APPELLANT'S COCAINE USE TO REBUT HIS INSANITY DEFENSE.

The PCRA court, in addressing this claim, assumed for the sake of argument, that the evidence from Mr. Calabrese was not merely corroborative and that the evidence was not solely for impeachment purposes.  The PCRA court, nonetheless, found that appellant was not entitled to PCRA relief and wrote as follows:

> Nevertheless, appellant is not entitled to relief due to his resounding failure to demonstrate that this matter would have changed the outcome of the trial. Calabrese testified that he observed appellant using cocaine just once, eight years before the shooting. It is inconceivable that the verdict would have been different in the absence of this testimony, given the other overwhelming direct and circumstantial evidence [FN8] of appellant's drug use.  Much of this evidence came from Commonwealth witnesses, including other wrestlers. Moreover, appellant's own experts and other defense witnesses testified that appellant had used drugs, and that his drug use

was far more extensive than the single instance noted by Calabrese. Indeed, it was the defense that first introduced evidence of appellant's drug use in an attempt to prove it was not the cause of his behavior on January 26, 1996.

> [FN8] "Direct" evidence is "testimony by a witness from his own personal knowledge, such as something that he saw or heard himself," e.g., Calabrese's observation of appellant snorting cocaine. Commonwealth v. Pursell, 508 Pa. 212, 495 A.2d 183, 195 (1985). "Circumstantial" evidence is "testimony about facts which point to the existence of other facts which are in question." Id.

[PCRA Court Opinion, 9/22/03, p. 14-15]. The PCRA court then noted all of the additional evidence and witnesses, both for the Commonwealth and defense, regarding appellant's use of cocaine, [PCRA Court Opinion, 9/22/03, p. 15-18], before concluding as follows:

> Nor can the Court imagine that the verdict would have differed had defense counsel cross-examined Calabrese with the alleged transcripts containing Calabrese's denial that appellant used drugs. Such impeachment efforts would have been buried under the mountain of testimony establishing appellant's serious drug abuse. [FN7]. "[Since] there is not reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." Copenhefer, supra, 719 A.2d at 259; see also Id. at 260 n.15 ("in order to be entitled to a new trial owing to the prosecution's failure to disclose evidence bearing on the credibility of its witnesses, appellant must demonstrate that the reliability of the witness may be determinative of his guilt or innocence").

> [FN7] Indeed, it might have disadvantaged the defense to cross-examine Calabrese with the alleged interview transcripts, since this tactic might have discredited the portions of Calabrese's testimony that supported appellant's insanity defense. N.T., 1999-2000.

35

(Calabrese's testimony that appellant put razor wire in the walls, dug tunnels on the property and made Calabrese watch videotapes to look for any movement on the property).

Appellant insists that Calabrese's testimony was the only direct evidence of appellant's drug use, and that Calabrese's recantation of this direct testimony renders inadmissible all circumstantial evidence of appellant's drug use. The Court disagrees for two reasons. First, Calabrese was not the only witness to provide direct evidence of appellant's cocaine use. Brian Dolph's testimony (p. 17, supra) constitutes direct testimony that he heard appellant ingest cocaine. See Footnote 8 (definition of direct testimony). Second, and more importantly, even if Calabrese provided the only direct testimony of drug use, and this testimony were excluded from evidence, the circumstantial evidence of appellant's drug use remained admissible. Standing alone, "circumstantial evidence is sufficient to sustain a conviction 'so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.'" Commonwealth v. Chambers, 528 Pa. 558, 599 A.2d 630, 635 (1991) (citing Commonwealth v. Steele, 522 Pa. 61, 559 A.2d 904, 909 (1989); Commonwealth v. Hardcastle, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). "Circumstantial evidence can be as reliable and persuasive as eyewitness testimony and may be of sufficient quantity and quality to establish guilt beyond a reasonable doubt." Id. (citing Commonwealth v. Tedford, 523 Pa. 305, 567 A.2d 610, 618 (1989)); see also Commonwealth v. Puksar, 559 Pa. 358, 740 A.2d 219, 223 (1999) (citing Commonwealth v. May, 540 Pa. 237, 656 A.2d 1335, 1340 (1995)) ("circumstantial evidence alone is sufficient to convict one of a crime, including first degree murder"). [FN11].

[FN11]   See also Commonwealth's Response to Appellant's Concise Statement of Matters Complained of on Appeal, pp. 30-31 ("drug use, like any other matter, can be shown by circumstantial evidence and not just by direct evidence of ingestion... There is no 'direct

36

evidence' or even 'best evidence' rule that applies to the matter of substance abuse").

Since circumstantial evidence by itself can establish guilt, it can also establish any other fact at issue, such as appellant's drug use, in the absence of direct evidence. [FN12]. It seems rather disingenuous that appellant claims Calabrese's recantation negates all circumstantial evidence of his drug use after appellant took the lead in adducing much of this evidence through five defense witnesses and opened the door for the Commonwealth to present further evidence on this subject.

> [FN12]  Indeed, even if Lewis, Chaid and Dolph only provided circumstantial evidence, their testimony was as convincing as the hornbook example of circumstantial evidence in Pennsylvania's standard jury instructions:
>
> A man may be able to testify that it was snowing at a particular time because he looked outside and saw the snow falling.  If, however, he did not actually see the snow coming down, but when he got up on morning and looked outside he saw fresh snow where there was none the night before, he can testify to these facts and the jury may infer from those facts that it had snowed during the night.

Pennsylvania Suggested Standard Civil Jury Instructions, §5.07.

Appellant makes much of the Court's remark that there would be a "huge problem" if the prosecution did not present direct evidence of appellant's cocaine use. N.T., 1824. The Court, however, uttered this remark before the Commonwealth presented the testimony of Lewis, Chaid and Dolph.  Even if this testimony was circumstantial, it was equivalent in quality and admissibility to any direct evidence of appellant's drug use. [FN13]. Chambers; Puksar.

> [FN13]  Appellant repeatedly states that the Commonwealth informed defense counsel that it would

not use Calabrese as a rebuttal witness but then substituted Calabrese for Paul McCarthy when McCarthy refused to testify. See e.g., Appellant's Answer to Commonwealth's Response to Original PCRA Petition, p. 8. McCarthy's role, appellant claims, was to supply direct evidence of appellant's cocaine, but "when McCarthy, without warning, disappeared from the witness screen, Calabrese unexpectedly appeared to supply the mandated nexus of direct use." Appellant's diatribe relating to McCarthy's failure to testify and Calabrese's surprise appearance is totally irrelevant. The only issue that matters is whether the verdict would have changed if Calabrese had not testified or if he had been cross-examined with his alleged denials that appellant used cocaine. On that issue, appellant cannot prevail.

Simply put, the issue of Calabrese's testimony does not entitle appellant to relief. Calabrese was only one of many witnesses to describe appellant's cocaine use, and his testimony took up only eighteen pages out of a transcript that far exceeded 3000 pages. Therefore, Calabrese's recantation of this trial testimony and the Commonwealth's alleged failure to divulge his prior inconsistent statements does not constitute a violation of appellant's constitutional right to due process that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. §9543(a)(2)(i).

[PCRA Court Opinion, 9/22/03, p. 18-20].

Appellant's further claim that the Commonwealth violated the disclosure requirements of <u>Brady v. Maryland</u>, 373 U.S., 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is devoid of merit. A defendant can obtain relief under <u>Brady</u> only where the disclosure violation is of a magnitude which makes it a constitutional due process violation which so undermined the

truth determining process that no reliable adjudication of guilt or innocence could have taken place. Commonwealth v. Copenhefer, 553 Pa. 285, ____, 719 A.2d 242, 259 (1998). Where the information which was not disclosed by the prosecution concerns a matter which is not significant to the outcome of the case, even under Brady a defendant is not entitled to relief. In the instant case, Judge Jenkins has previously determined that the entire body of the Commonwealth's drug evidence did not have a significant bearing upon the verdict. As previously noted, federal courts conducting habeas review must defer to and accept such factual determinations by the state court under AEDPA. Woodward v. Visciotti, supra; Werts v. Vaughn, supra. Accordingly, additional evidence to impeach the testimony of Mr. Calabrese regarding one aspect of the Commonwealth's evidence regarding appellant's cocaine use could not have affected the verdict. Thus, there was no basis for relief to appellant under Brady and the PCRA court properly rejected this claim without an evidentiary hearing.

The Superior Court, in affirming Judge Jenkins regarding appellant's Brady challenges and assertions regarding the Calabrese testimony, said the following:

> The trial court focused on duPont's failure to demonstrate
> prejudice, noting that particular that the defense initiated

39

discussion of duPont's drug use, T.C.O. at 15, that Calabrese's recanted testimony established only that duPont had used cocaine approximately eight years before the killing, T.C.O. at 13, and that several experts and other wrestlers had testified extensively and cumulatively do duPont's cocaine use, T.C.O. at 15-17. The trial court concluded that,

> [i]n view of this vast body of evidence, it is difficult to envisage how exclusion of Calabrese's testimony would have changed the verdict... Calabrese's testimony was a relatively minor piece of evidence in rebutting the defense claim that [duPont] killed Dave Schultz because he suffered from paranoid schizophrenia. The absence of Calabrese's direct testimony, contained in only three pages of transcript, would not have devastated the Commonwealth's case; it would have had virtually no impact.

T.C.O. at 17-18 (internal quotation marks and citations omitted). We agree with this statement and the balance of Judge Jenkins' analysis on this question. T.C.O. at 12-20. Accordingly, we affirm on the rationale there asserted.

Commonwealth v. DuPont, supra, at 538.

Applying the proper standard of review under AEDPA, it cannot be said that the state court determinations were contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that the determination was the result of an unreasonable factual determination. Accordingly, appellant's claims was properly rejected as meritless.

In rejecting appellant's claim, Judge Tucker, through United States Magistrate Judge Caracappa, stated:

Mr. Calabrese testified that he witnessed petitioner use cocaine just once, eight years prior to the shooting. This testimony was presented after the defense introduced the subject of petitioner's drug use. The Commonwealth did not present evidence of drug use in its case-inchief. Petitioner's own experts and other defense witnesses testified that petitioner had used drugs more than the single instance to which Mr. Calabrese testified. The Commonwealth also introduced other witnesses, aside from Mr. Calabrese, who testified to drug use by petitioner. There was plenty of direct and circumstantial evidence of petitioner's drug use, other than Mr. Calabrese witnessing petitioner use cocaine on one instance eight years prior to the shooting. With all of the other evidence presented at trial it cannot be said that the outcome of petitioner's trial would have been different if Mr. Calabrese had not testified to that one incident of petitioner's use of cocaine.

Petitioner further claims that the Commonwealth violated the disclosure requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In order for a petitioner to prove a Brady violation the petitioner must show the Commonwealth's failure to disclose was of a magnitude which makes it a constitutional due process violation which so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. Commonwealth v. Copenhefer, 553 Pa. 285, 719 A.2d 242, 259 (1998). The state court reviewed this portion of the petitioner's claim and relying on the additional evidence of petitioner's drug use besides Mr. Calabrese, as mentioned above, found the claim meritless. As stated above, Mr. Calabrese's testimony was only a small portion of the entire drug use testimony offered by both defense and the Commonwealth at trial. It cannot be said that the admission of Mr. Calabrese's brief testimony so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

[United States District Court Opinion, 9/18/08, p. 13].

41

**F. WHERE THERE WERE NO HARMLESS ERROR DETERMINATIONS BY THE DISTRICT COURT REGARDING THE STATE COURT RULINGS COMPLAINED OF THERE CAN BE NO CUMULATIVE PREJUDICE IN CONNECTION WITH THE PURPORTED ERRORS AND THE DISTRICT COURT PROPERLY REJECTED APPELLANT'S CUMULATIVE ERROR CLAIM USING THE CORRECT ANALYSIS AND STANDARD OF REVIEW.**

Appellant claims the District Court erred by failing to use the proper standard of review and analysis regarding his cumulative error claim. He is wrong. A cumulative error claim applies in instances where there are errors which the reviewing court finds to be harmless. It does not apply where there are no errors.

> Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief on the basis of cumulative errors unless he can establish actual prejudice.

Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008).

Here, the District Court properly determined that there were no errors, harmless or otherwise, committed by the state courts. The District Court rejected each of appellant's claims as meritless. There can be no accumulation of prejudice in connection with meritless claims. Berryman v. Morton, 100 F.3d 1089, 1097, 1102 (3d Cir. 1996); Breakiron v. Horn, (2008 WL 4412057 (W.D. Pa. 2008)). Appellant's claim that the District

Court applied the wrong standard and analysis is devoid of merit. Appellant's claim provides no basis for a Certificate of Appealability.

## III.    CONCLUSION

For all of the aforementioned reasons, appellant's motion seeking a Certificate of Appealability should be denied.

Respectfully submitted,

William R. Toal, III
Assistant District Attorney
(Attorney for Appellees)

43

## PROOF OF SERVICE

WILLIAM R. TOAL, III, Assistant District Attorney, hereby certifies that on December 23, 2008, he served the persons in the manner indicated below, which service satisfies the requirement of the Federal Rule of Appellate Procedure 25.

FIRST-CLASS MAIL
AS FOLLOWS:

Burt M. Rublin, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street – 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

Diana L. Spagnuolo, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street – 51st Floor
Philadelphia, PA 19103-7599
(215) 665-8500

David Rudovsky, Esquire
Kairys Rudovsky Messing & Feinberg, LLP
718 Arch Street
Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(Attorneys for Appellant)

William R. Toal, III          ID# 42549
Assistant District Attorney
Office of the District Attorney
Delaware County Court House
201 West Front Street
Media, PA 19063-2783
(610) 891-4210
(Attorney for Appellees)